Mr. Neal J. Dunn County Attorney Hendry County
QUESTIONS:
1. Does the sheriff have the authority to transfer or trade any confiscated material to obtain other necessary equipment to be used by the law enforcement agency?
2. Should the board of county commissioners be advised and do they have authority concerning any such transfer or trade by the sheriff when that sheriff contemplates such a transfer or trade to obtain other law enforcement materials?
3. Can the funds in a special law enforcement trust be used to benefit law enforcement by using confiscated funds to improve law enforcement facilities pursuant to ss. 932.701-932.704, F.S.?
SUMMARY:
1. The sheriff is authorized pursuant to ch. 274, F.S., to transfer or trade confiscated property for other necessary equipment once forfeiture proceedings have been completed and a title certificate, for titled property, has been issued to the sheriff's office under s. 932.704, F.S.
2. The board of county commissioners has no authority over the decision of a sheriff to sell, transfer or trade-in or classify as surplus confiscated property.
3. The board of county commissioners has the exclusive authority under s. 932.704(3)(a), F.S., to appropriate funds in a special law enforcement trust fund to the sheriff's office for such law enforcement purposes as the board deems appropriate, except that such trust fund may not be used as a source of revenue to meet normal operating needs of the sheriff's office.
AS TO QUESTION 1:
Sections 932.701 through 932.704, F.S., known as the Florida Contraband Forfeiture Act, supplies the authority and procedures for the seizure and forfeiture of vessels, motor vehicles, aircraft, and other personal property which has been used or is used in violation of s. 932.702. Section 932.701, F.S., provides the title to the act and the definition of `contraband article.' Section 932.702, in pertinent part, makes it unlawful to transport, carry or convey any contraband article in, upon, or by means of any vessel, motor vehicle, or aircraft, to conceal or possess any contraband article in or upon any vessel, motor vehicle, or aircraft, or to use any vessel, motor vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, exchange, or giving away of any contraband article. Section 932.703(1), in relevant part, provides: `Any vessel, motor vehicle, aircraft, and other personal property which has been or is being used in violation of any provision of s.932.702 or in, upon, or by means of which, any violation of said section has taken or is taking place, as well as any contraband article involved in the violation, shall be seized.' As provided further by this subsection, `[a]ll rights and interest in and title to contraband articles or contraband property used in violation of s. 932.702 shall immediately vest in the state upon seizure by a law enforcement agency, subject only to perfection of title, rights, and interests in accordance with [the Florida Contraband Forfeiture Act].' This section goes on to preserve owner and lienholder interests in the seized property under certain conditions. See subsections (2) and (3) of s. 932.703. Section 932.704, F.S., sets forth the proceedings for forfeiture. The state attorney within whose jurisdiction the contraband article, vessel, motor vehicle, aircraft, or other personal property has been seized or an attorney employed by the seizing law enforcement agency shall proceed by a rule to show cause in the circuit court to have the seized property forfeited to the use of, or to be sold by, the law enforcement agency making the seizure. Subsection (1) of s. 932.704. `The final order of forfeiture by the court shall perfect the state's right and interest in and title to such property and shall relate back to the date of seizure.' Id. After the forfeiture proceedings and the state has received the title to the seized property, subsection (3)(a) of s. 932.704 permits the head of the law enforcement agency, whenever he deems it necessary or expedient, `to sell the property forfeited rather than to retain it for the use of the law enforcement agency . . . [and] dispose of the property at public auction to the highest bidder for cash without appraisal.' In lieu of auctioning the property, the head of the law enforcement agency `may salvage the property or transfer the property to any public or nonprofit organization, provided such property is not subject to a lien preserved by the court as provided in s. 932.703(3).' In the alternative, subsection (4) of s. 932.704 provides that `[u]pon the request of any law enforcement agency which elects to retain titled property after forfeiture, the state shall issue a title certificate for such property to the agency.' Subsection (5) of s. 932.704, F.S., requires any law enforcement agency that has received forfeited property or proceeds from the sale of property in accordance with the provisions of the Florida Contraband Forfeiture Act to `submit a quarterly report to the entity which has budgetary authority over such agency, which report shall specify, for such period, the type and approximate value of the property received and the amount of any proceeds received.'
The provisions of ss. 932.071-932.704, F.S., do not in express terms authorize the sheriff to transfer or trade any confiscated or forfeited property to obtain other necessary equipment for the law enforcement agency; however, once the sheriff obtains title to the forfeited property pursuant to s. 932.704(4), F.S., such property becomes subject to the provisions of ch. 274, F.S., and the custody, control and disposition of that property is governed by ch. 274. Section 274.01(1), F.S., defines `[g]overnmental unit' to mean `the governing board, commission or authority of a county or taxing district of the state or the sheriff of the county.' (Emphasis supplied.) The statutory definition including the sheriff as a separate statutory unit is consistent with the preservation of the integrity of a constitutional office. See
Weitzenfeld v. Dierks, 312 So.2d 194 (Fla. 1975); s. 30.53, F.S. Property is defined for purposes of ch. 274 to mean `all tangible personal property, owned by a governmental unit, of a nonconsumable nature.' Section 274.01(3), F.S.
Prior to 1961 the definition of `governmental unit' contained in s. 274.01 did not include sheriffs. See s. 274.01(1), F.S. 1959. Chapter 61-102, Laws of Florida, amended this definition to include sheriffs. In AGO 061-61 prior to the definition's amendment, this office, based on s. 30.53, F.S., concluded `that the sheriff, in keeping with the legislative pronouncement that his independence should be maintained in connection with the purchase of equipment, would be authorized to trade in such equipment on any equipment being purchased by the sheriff's office without the approval of the board of county commissioners.' The inclusion of sheriffs in the statutory definition of `governmental unit' by ch. 61-102, Laws of Florida, would strengthen this conclusion. Section 274.04, F.S., in pertinent part, provides that `[w]henever acquiring property, the governmental unit may pay the purchase price in full or may exchange property with the seller as a trade-in and apply the exchange allowance to the cost of the property acquired.' It is therefore my opinion that the sheriff is authorized pursuant to ch. 274, F.S., to transfer or trade confiscated property for other necessary equipment once forfeiture proceedings have been completed and a title certificate, for titled property has been issued to the sheriff's office. Prior to the title being issued the provisions of ss. 932.701-932.704, F.S., should be followed.
AS TO QUESTION 2:
Your second question is whether the board of county commissioners has the authority over a transfer or trade of forfeited property for other law enforcement materials. As stated in Question One, this office in AGO 061-61 concluded that the sheriff, without theapproval of the board of county commissioners, is authorized to trade in equipment of his office for any equipment being purchased by the sheriff's office. This conclusion was based on the provisions of Florida Statute s. 30.53, F.S. This statute in pertinent part provides that `[t]he independent of sheriffs shall be preserved concerning the purchase of supplies and equipment . . . .' In Weitzenfeld v. Dierks, 312 So.2d 194 (Fla. 1975), the Florida Supreme Court found that the internal operation of the sheriff's office and the allocation of appropriated moneys within the statutorily prescribed items of the sheriff's budget to be a function belonging uniquely to the sheriff, and that to hold otherwise would harm the integrity of a constitutional office and violate the precept established by s. 30.53, F.S., which preserves the independence of the sheriff.
Further, s. 932.704(3)(a), F.S., provides that whenever the head of the law enforcement agency (in this case the sheriff) deems it necessary or expedient to sell forfeited property he may do so. No other individual or public agency is vested with supervisory authority over this decision, it is the sheriff alone who makes such a determination. And again it is the sheriff as a `governmental unit' under ch. 274, F.S., who has the primary responsibility for the supervision and control of property and makes the decision to trade-in or surplus such property. See ss.274.03, 274.04 and 274.05, F.S.
Based on these statutory provisions it is therefore my opinion that a board of county commissioners has no authority over the decision of a sheriff to sell, transfer or trade-in or classify as surplus confiscated property.
AS TO QUESTIONS 3 and 4:
Because Questions 3 and 4 are interrelated they will be answered together.
Subsection (3)(a) of s. 932.074, F.S., as set forth above, provides that the head of the law enforcement agency whenever he deems it necessary or expedient may sell the forfeited property. The proceeds of such sale shall be applied: first, to any lien preserved by the court in forfeiture proceedings; second, to the payment of costs in storage, maintenance, and security for the seized property incurred by the law enforcement agency; third, to costs incurred by the state attorney; and fourth, to court costs. The remaining proceeds after the payment of these costs are to be placed in a `special law enforcement trust fund' established by the governing body of the county and are to be used only for law enforcement purposes. Funds from this special trust fund can be expended only by an appropriation to the sheriff's office by the board of county commissioners `to defray the costs of protracted or complex investigations, to provide additional technical equipment or expertise, to provide matching funds to obtain federal grants, or for such other law enforcement purposes as theboard of county commissioners . . . deems appropriate and shall not be considered a source of revenue to meet normal operating needs. (Emphasis supplied.) The clear language of this statute gives the board of county commissioners the authority to use the proceeds deposited in a special law enforcement trust fund for such law enforcement purposes as the board deems appropriate except that the fund cannot be used for normal operating needs of the sheriff's office. Cf. AGO 078-55 which concluded that in reference to the decision to purchase physical fitness equipment for local law enforcement officers, `it is the duty and responsibility of the governing bodies *3466 of the affected counties and municipalities to approve or disapprove the expenditures from, and the appropriation of, the funds collected under s. 943.25(5) for such law enforcement education programs and purposes.' I conclude that s. 932.704(3)(a) vests the board of county commissioners with the exclusive authority to decide for what law enforcement purposes funds from a special law enforcement trust fund are to be appropriated to the sheriff's office.
Sincerely,
Jim Smith Attorney General
Prepared by: Craig Willis, Assistant Attorney General